1
2
3
4
5
6
7

# O

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11  JENNY LOU CHADWELL,                )  Case No. CV 11-568-OP
                                                      )
12                        Plaintiff,           )
                                                      )
13              v.                               )  MEMORANDUM OPINION; ORDER
                                                      )
14  MICHAEL J. ASTRUE,                   )
     Commissioner of Social Security,  )
15                                                  )
                                                      )
16                        Defendant.        )

17                                            **I.**

18                          **PROCEDURAL HISTORY**

19          Jenny Lou Chadwell ("Plaintiff"), appearing pro se, applied for Social

20  Security Disability ("SSD") benefits on April 29, 2006.  (Administrative Record

21  ("AR") at 70-75.)  On October 18, 2006, her application was denied.  (Id. at 24.)

22  She made a timely request for reconsideration, which was denied on July 19, 2007.

23  (Id. at 28-33.)  On August 7, 2007, Plaintiff timely requested a hearing before an

24  Administrative Law Judge ("ALJ"), which was held on January 14, 2009.  (Id. at

25  34, 342-62.)  On February 2, 2009, the ALJ issued an unfavorable decision.  (Id. at

26  12-21.)  Plaintiff timely appealed the hearing decision to the Appeals Council.  On

27  November 22, 2010, the Appeals Council denied her request to review her case.

28  (Id. at 4-6.)  Thus, the ALJ's decision is the Commissioner's final decision in this

1

matter.

On January 31, 2011, Plaintiff filed a Complaint seeking review in this Court of the Commissioner's decision denying Social Security benefits. (ECF No. 3.) On June 6, 2011, Defendant filed an Answer to the Complaint. (ECF No. 12.) On July 7, 2011, Plaintiff filed a Motion for Summary Judgment ("Plaintiff's MSJ"). (ECF No. 17 ) On August 5, 2011, Defendant filed a Cross-Motion for Summary Judgment ("Defendant's MSJ"). (ECF No. 21.) On August 22, 2011, Plaintiff filed a Reply to Defendant's MSJ. (ECF No. 22.)

Pursuant to 28 U.S.C. § 636(c), the parties have consented to proceed before the United States Magistrate Judge. (ECF Nos. 7, 9-10.) The decision in this case is made on the basis of the pleadings, the Administrative Record, Plaintiff's MSJ, and Defendant's MSJ. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

## II.

## DISPUTED ISSUES

As reflected in Plaintiff's MSJ, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1)     Whether the ALJ properly considered the opinion of Dr. Barry Eibschutz, Plaintiff's treating physician (Pl.'s MSJ at 3; see also Def.'s MSJ at 8);

(2)     Whether the ALJ properly considered the opinions of the State Agency physicians (Pl.'s MSJ at 3; see also Def.'s MSJ at 7);

(3)     Whether the ALJ properly determined that Plaintiff did not meet a Listing (Pl.'s MSJ at 3; see also Def.'s MSJ at 7); and

(4)     Whether the ALJ properly relied on the testimony of the vocational expert ("VE") (Pl.'s MSJ at 3; see also Def.'s MSJ at 8).

2

# III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); <u>Desrosiers v. Sec'y of Health & Human Servs.</u>, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. <u>Green v. Heckler</u>, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).

# IV.

## DISCUSSION

### A.   The ALJ's Findings.

The ALJ found that Plaintiff has the severe impairment of seropositive rheumatoid arthritis. (Administrative Record ("AR") at 17.) She found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work. (<u>Id.</u> at 18.)

The ALJ determined that Plaintiff was capable of performing her past relevant work as a resource coordinator/administrator (Dictionary of Occupational Titles ("DOT") No. 169.167-010). (<u>Id.</u> at 20.) The ALJ also relied on the testimony of the VE to determine that Plaintiff could perform her past relevant work as a driving instructor (DOT No. 099.223-010). (<u>Id.</u> at 21.)

**B.**   **The ALJ's Consideration of the Opinion of Plaintiff's Treating Physician.**

On February 4, 2005, Plaintiff's treating physician, Dr. Eibschutz, completed a report regarding his physical examination of Plaintiff.  (AR at 233-35.)  Under the heading "Impression," Dr. Eibschutz stated, "[s]ymmetric polyarthritis; at present, [Plaintiff] is disabled as a consequence.  Given the symmetry and involvement of the right elbow with a flexion contracture, I favor a diagnosis of rheumatoid arthritis.  Her rheumatoid factor when last checked in August of 2004 was negative."  (Id. at 234.)

Similarly, on January 9, 2009, Dr. Eibschutz submitted a letter to the Social Security Disability Office regarding Plaintiff.  In his letter, Dr. Eibschutz noted the following:  Plaintiff's rheumatoid arthritis was "barely controlled" by methotrexate; Plaintiff continued to experience painful and swollen joints; Plaintiff's range of motion was limited, and she had trouble grasping and lifting; Plaintiff experienced "brain fog" due to the side effects of her medication; and Plaintiff was capable of "ADLs [activities of daily living]" and menial tasks.  (Id. at 292.)

Plaintiff contends that the ALJ failed to properly consider Dr. Eibschutz's opinion.  Specifically, Plaintiff contends that the ALJ did not consider the report of February 4, 2005, or the letter of January 9, 2009. (Pl.'s MSJ at 3.)

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other

1    evidence in the record.  See 20 C.F.R. § 404.1527(d)(2).  If the treating

2    physician's opinion is uncontroverted by another doctor, it may be rejected only

3    for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

4    1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating

5    physician's opinion is controverted, it may be rejected only if the ALJ makes

6    findings setting forth specific and legitimate reasons that are based on the

7    substantial evidence of record.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

8    2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th

9    Cir. 1987).

10       However, the Ninth Circuit also has held that "[t]he ALJ need not accept the

11   opinion of any physician, including a treating physician, if that opinion is brief,

12   conclusory, and inadequately supported by clinical findings."  Thomas, 278 F.3d

13   at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.

14   1992).  A treating or examining physician's opinion based on the plaintiff's own

15   complaints may be disregarded if the plaintiff's complaints have been properly

16   discounted.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir.

17   1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews

18   v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  Additionally, "[w]here the opinion

19   of the claimant's treating physician is contradicted, and the opinion of a

20   nontreating source is based on independent clinical findings that differ from those

21   of the treating physician, the opinion of the nontreating source may itself be

22   substantial evidence; it is then solely the province of the ALJ to resolve the

23   conflict."  Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v.

24   Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

25       Here, Plaintiff's contentions with regard to the ALJ's consideration of the

26   the report of February 4, 2005, and the letter of January 9, 2009, are unclear.  To

27   the extent Plaintiff contends that the ALJ did not consider the report or the letter at

28   all, her contention is belied by the record.  With respect to the February 4, 2005,

report, the ALJ stated, "[in February] Dr. Eibschutz reported symmetric polyarthritis, diagnosing rheumatoid arthritis although rheumatoid factor testing was negative." (AR at 18.)  With respect to the January 9, 2009, letter, the ALJ stated:

> In January 2009 Dr. Eibschutz reported that rheumatoid arthritis was "barely controlled" by Methotrexate, with complaints of painful and swollen joints limiting grasping and lifting.  Fatigue and cognitive impairment were also indicated, with side-effects from Aleve, Atenolol and Wellbutrin also causing gastrointestinal upset.  He reported that the claimant was capable of activities of daily living and menial tasks, and required physical assistance.

(Id. at 19.)

Further, to the extent Plaintiff asserts that the ALJ improperly rejected Dr. Eibschutz's opinion, the Court disagrees.  First, the ALJ's decision reflects that she largely agreed with Dr. Eibschutz's opinion.  As noted above, the ALJ found that Plaintiff had the severe impairment of seropositive rheumatoid arthritis, a similar diagnosis to the one Dr. Eibschutz provided in his February 4, 2005, report, as well as in subsequent reports.  (Id. at 17-18, 223, 234.)  Second, with respect to the January 9, 2009, letter, the ALJ noted that Dr. Eibschutz's statements regarding Plaintiff's "near paralyzing" limitations were not consistent with the opinions of several other physicians, including Dr. Dean Chiang, a consultative examining physician, Dr. Elpidio Fonte, the State Agency consulting physician, and Dr. Ana Onglao, an examining physician.  Each physician found that Plaintiff's rheumatoid arthritis was moderate or under control, and her functional limitations due to her condition were not as great as those suggested by Dr. Eibschutz in the January 9, 2009, letter.  (Id. at 20, 236-39, 246-47, 258.)  These opinions, especially the opinions of Drs. Chiang and Onglao, constitute substantial evidence because they were based on independent clinical findings,

6

and any conflict between these findings and Dr. Eibschutz's opinion was for the ALJ to resolve.  See Andrews, 53 F.3d at 1041 (opinion of nontreating source based on independent clinical findings may itself be substantial evidence). Additionally, the ALJ noted that the January 9, 2009, letter was not supported by "medical signs and laboratory findings."  (AR at 20.)  For example, imaging reports indicated only mild degenerative changes in Plaintiff's joints.  (Id. at 20, 197, 240.)  Moreover, as the ALJ noted, Dr. Eibschutz's January 9, 2009, letter was not accompanied by any additional treatment notes and was inconsistent with his earlier treatment notes for Plaintiff, which indicated minimal abnormal findings and improvement of her rheumatoid arthritis symptoms with medication. (Id. at 20, 181-82, 217, 220, 223, 234.)

        Based on the foregoing, the Court finds that to the extent the ALJ rejected Dr. Eibschutz's opinions, the ALJ provided specific and legitimate reasons, based on substantial evidence in the record, to do so.  Thomas, 278 F.3d at 957; Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller, 770 F.2d at 849. Thus, there was no error.

**C.      The ALJ's Consideration of the Opinions of the State Agency Physicians.**

        On October 5, 2006, Dr. Fonte, a State Agency consulting physician, completed a Disability Determination and Transmittal report for Plaintiff.  In the report, Dr. Fonte diagnosed Plaintiff with "[o]steoarthritis & [a]llied [d]isorders," and listed the diagnosis code as 7150.  (AR at 22.)  On July 19, 2007, Dr. Paul Frye, a State Agency consulting physician, also completed a Disability Determination and Transmittal report for Plaintiff.  Dr. Frye provided the same diagnosis with the same code.  (Id. at 23.)

        Plaintiff contends that the ALJ improperly based her decision on the diagnoses of Drs. Fonte and Frye.  (Pl.'s MSJ at 3.)  Specifically, Plaintiff alleges that Dr. Fonte and Dr. Frye used the wrong codes in their Disability Determination

7

1  and Transmittal reports and incorrectly diagnosed Plaintiff with osteoarthritis.

2  (AR at 22-23; Pl.'s MSJ at 3.)  Plaintiff alleges that to the extent the ALJ relied on

3  these incorrect diagnoses, such reliance was erroneous.  (Pl.'s MSJ at 3.)

4       Here, Plaintiff has not demonstrated that the ALJ relied on the  Disability

5  Determination and Transmittal reports at any step of the sequential evaluation

6  process, and the Court has not found any references to them in the decision.  (Id. at

7  15-21.)  Moreover, Plaintiff has not explained the effect, if any, of the ALJ's

8  alleged erroneous reliance on the diagnoses.  Here, the Court finds that the ALJ

9  accounted for all significant probative evidence of Plaintiff's impairment and

10  limitations.  Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998).  The ALJ

11  stated that she carefully considered all of the evidence in accordance with

12  administration regulations.  (AR at 17.)  As discussed above, the ALJ considered

13  the opinions of the various treating, examining, and consulting physicians, as well

14  as the objective evidence, including laboratory results and imaging reports.  (Id. at

15  181-82, 197, 217, 220, 223, 234, 236-40, 246-47, 258.)

16       Moreover, even if there was error, it was harmless.  The ALJ specifically

17  relied upon Dr. Fonte's Physical Residual Functional Capacity Assessment and his

18  Case Analysis for Plaintiff.  (Id. at 19-20, 241-47.)  In his Physical Residual

19  Functional Capacity Assessment, completed the same day as the Disability

20  Determination and Transmittal Report, Dr. Fonte diagnosed Plaintiff with

21  rheumatoid arthritis and imposed the following functional limitations:  Plaintiff

22  could occasionally lift fifty pounds, and frequently lift twenty-five pounds;

23  Plaintiff could stand, sit, and/or walk for about six hours in an eight-hour

24  workday; and Plaintiff had no postural, manipulative, visual, or environmental

25  limitations.  (Id. at 241-42.)  As discussed above, the ALJ found that Plaintiff had

26  the severe impairment of seropositive rheumatoid arthritis and determined that

27  Plaintiff had the RFC to perform the full range of light work – arguably more

28

1    restrictive than Dr. Fonte's findings.[1]  (Id. at 17-18.)

2        Accordingly, even assuming the Court were to find that the ALJ erroneously

3    relied on the diagnoses included in the Disability Determination and Transmittal

4    reports, which it does not, the error was harmless.  Stout v. Comm'r of Soc.

5    Security, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's error is harmless where

6    such error is inconsequential to the ultimate non-disability determination); Curry

7    v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to

8    review of administrative decisions regarding disability).

9    **D.    The ALJ's Determination That Plaintiff's Impairment Did Not Meet a**

10         **Listing.**

11       Plaintiff contends that the ALJ failed to determine whether Plaintiff's

12   impairment of rheumatoid arthritis was correctly categorized under the Listings.

13   Although it is not completely clear from the Plaintiff's MSJ, Plaintiff appears to

14   contend that her condition should have been categorized as "autoimmune" rather

15   than "musculoskeletal."  (Pl.'s MSJ at 3.)  The Court presumes that Plaintiff refers

16   to Listing 14.09, inflammatory arthritis.[2]

17   _____

18     [1]  The Dictionary of Occupational Titles ("DOT") defines light work as:
19     Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds
       of force frequently, and/or a negligible amount of force constantly . . .
20     to move objects.  Physical demand requirements are in excess of those
       for Sedentary work.  Even though the weight lifted may be only a
21     negligible amount, a job should be rated Light Work:  (1) when it
       requires walking or standing to a significant degree; or (2) when it
22     requires sitting most of the time but entails pushing and/or pulling of
       arm or leg controls; and/or (3) when the job requires working at a
23     production rate pace entailing the constant pushing and/or pulling of
24     materials even though the weight of those materials is negligible.
25
26   DOT, Fourth Ed., 1991, App. C.

27     [2]  Listing 14.00(D)(6) describes inflammatory arthritis as follows:
28                                                    (continued...)

9

When denying benefits, the responsibilities of the ALJ are clear.  Under 42 U.S.C. 405(b)(1), in her decision, the ALJ is required to discuss the evidence and, upon a finding of non-disability, explain why a claimant is not disabled under the Listings.  Further, the ALJ has a responsibility to develop the record and interpret and consider the evidence.  See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).  Similarly, at step three of the sequential process, the ALJ is generally required to elaborate as to the disability Listings she considered in the process, and state reasons why the claimant's impairment or impairments did not meet or equal the contemplated Listings.  "However, in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'"  Id. (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)); see also Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Likewise, if the ALJ improperly fails to consider a Listing that may entitle the claimant to benefits, that "error [is] harmless if [the] findings he made elsewhere conclusively negate[]

---

[2](...continued)

a. General. The spectrum of inflammatory arthritis includes a vast array of disorders that differ in cause, course, and outcome. Clinically, inflammation of major peripheral joints may be the dominant manifestation causing difficulties with ambulation or fine and gross movements; there may be joint pain, swelling, and tenderness. The arthritis may affect other joints, or cause less limitation in ambulation or the performance of fine and gross movements.  However, in combination with extra-articular features, including constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss), inflammatory arthritis may result in an extreme limitation.

. . . .

c. Inflammatory arthritis involving the peripheral joints.  In adults, inflammatory arthritis involving peripheral joints may be associated with disorders such as:

(i) Rheumatoid arthritis[.]

20 C.F.R. pt. 404, subpt. P, App. 1, § 14.00(D)(6).

1  [claimant's] claim under [the] Listing [that was not considered]." See Carpenter v.

2  Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) (citing Fischer-Ross v. Barnhard,

3  431 F.3d 729, 733 (10th Cir. 2005)).

4        Listing 14.09(A)[3] provides that a person meets the criteria for this section if

5  the medical evidence shows as follows:

6              A. Persistent inflammation or persistent deformity of:

7              1. One or more major peripheral weight-bearing joints resulting

8        in the inability to ambulate effectively . . .; or

9              2. One or more major peripheral joints in each upper extremity

10       resulting in the inability to perform fine and gross movements

11       effectively . . . .

12  20 C.F.R. pt. 404, subpt. P, App. 1, § 14.09(A).

13       Here, the ALJ did not address Listing 14.09(A) in determining that

14  Plaintiff's severe impairment of seropositive rheumatoid arthritis did not meet or

15  equal a listed impairment.  Rather, at step three of the sequential evaluation

16  process, the ALJ stated, "[t]hrough the date last insured, [Plaintiff] did not have an

17  impairment or combination of impairments that met or medically equaled one of

18  the listed impairments . . . ."  (AR at 18.)  The ALJ's failure to specify which listed

19  impairments, if any, she considered in reaching her determination at step three was

20  erroneous.  However, the ALJ's failure to mention whether she considered Listing

21  14.09 was not reversible error.

22       Here, Plaintiff has not demonstrated that her rheumatoid arthritis meets

23  Listing 14.09(A).  Specifically, Plaintiff has not demonstrated that her condition

24  affected her ability to ambulate effectively or affected her ability to perform fine

25  _____

26       [3]  Plaintiff does not refer to organs/body systems, severe fatigue, fever,
    malaise, involuntary weight loss, ankylosing spondylitis or other
27  spondyloarthropathies in her Motion for Summary Judgment.  Accordingly, those
    Listing requirements are irrelevant.
28

11

and gross movements effectively.  Under the Listings, the inability to ambulate effectively is defined as:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. pt. 404, subpt. P, App. 1, § 1.00(B)(2)(b)(1).  In contrast, the medical records reflect that Plaintiff generally was able to ambulate well.  Dr. Eibschutz noted that Plaintiff "ambulat[es] with a waddling antalgic gait" during his first physical examination of her (AR at 234), but later treatment notes indicated that Plaintiff "look[ed] well" and her condition improved with medication (id. at 217, 223).  Further, Drs. Onglao and Chiang, both examining physicians, noted that Plaintiff ambulated without any problems during their examinations of her.  (Id. at 195, 237, 258.)  Thus, Plaintiff has not demonstrated that her rheumatoid arthritis meets Listing 14.09(A)(1).[4]

---

[4]  In her Reply Brief, Plaintiff asserts that she meets Listing 14.09(D).  (ECF No. 22 ("Pl.'s Reply Br.") at 2.)  However, Plaintiff does not cite to any evidence in the record to support her contention.  Moreover, Listing 14.09(D) indicates that an individual must have, *inter alia*, a marked limitation of activities of daily living.  20 C.F.R. pt. 404, subpt. P, App.1, § 14.09(D)(1).  Here, as the ALJ noted, Dr. Eibschutz opined that Plaintiff was capable of performing activities of daily living, even as her rheumatoid arthritis was "barely controlled" by medication.  (AR at 19, 292).  Further, Plaintiff testified at the hearing that she could "do all the things that I suppose everybody can do," although she could not perform them as quickly as before.  (Id. at 19, 350-51, 354.)  Plaintiff does not contend that she has marked limitations in "maintaining social functioning" and/or "completing tasks in

(continued...)

12

1     Nor is there any indication in the record that Plaintiff is unable to perform

2    fine and gross movements with her upper extremities.  Thus, Plaintiff has not

3    demonstrated that her rheumatoid arthritis meets Listing 14.09(A)(2).

4     Based on the foregoing, while the ALJ's failure to consider Listing 14.09

5    was erroneous, the Court finds that such error was harmless.  Stout, 454 F.3d at

6    1055; Curry, 925 F.2d at 1131.

7   **E.**   **The ALJ's Reliance on the Testimony of the Vocational Expert.**

8     Plaintiff contends that the ALJ improperly relied on the testimony of the VE

9    to determine that Plaintiff could perform her past relevant work as a driving

10   instructor.  Plaintiff contends that she worked as a "traffic violator school

11   instructor,"[5] not a driving instructor, and that she can no longer perform this

12   position due to her functional limitations.  (Pl.'s MSJ at 3.)  As discussed above,

13   the ALJ determined that Plaintiff was capable of performing her past relevant

14   work as a resource coordinator/administrator.  Additionally, the ALJ, relying on

15   the testimony of the VE, determined that Plaintiff could perform her past relevant

16   work as a driving instructor.  (Id. at 21.)

17     At step four of the sequential evaluation process, a claimant must establish

18   that her severe impairment or impairments prevent her from doing past relevant

19   work.  Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).  The regulations

---

22      [4](...continued)

23   a timely manner due to deficiencies in concentration, persistence, or pace."  20
C.F.R. pt. 404, subpt. P, App.1, § 14.09(D)(2-3).  Thus, Plaintiff has not

24   demonstrated that her rheumatoid arthritis meets Listing 14.09(D).

25      [5]  Plaintiff asserts that her position of "traffic violator school instructor" is a

26   "specialized licensed position through [the] Calif[ornia] [Department of Motor
Vehicles] (TVSI) Calif. [sic] Vehicle Code."  However, Plaintiff does not provide

27   a citation to the California Vehicle Code that demonstrates either the specific title

28   of the position or any "specialized licensed" requirement.

explain the step-four evaluation:

> If we cannot make a decision based on your current work activity or on
> medical facts alone, and you have a severe impairment(s), we then
> review your residual functional capacity and the physical and mental
> demands of the work you have done in the past.  If you can still do this
> kind of work, we will find that you are not disabled.

20 C.F.R. §§ 404.1520(e), 416.920(e).  Plaintiff has the burden of showing that
she can no longer perform her past relevant work.  20 C.F.R. §§ 404.1520(e),
416.920(e); see also Clem v. Sullivan, 894 F.2d 328, 331-32 (9th Cir. 1990).
Although the burden of proof lies with Plaintiff, the ALJ still has a duty to make
requisite factual findings to support her conclusion as to whether Plaintiff can
perform her past relevant work.  See Pinto, 249 F.3d at 844 (despite the fact that
the claimant has the burden at step four, "the ALJ is [not] in any way relieved of
his burden to make the appropriate findings to insure that the claimant really can
perform his or her past relevant work"); see also Henrie v. U.S. Dept. of Health &
Human Serv., 13 F.3d 359 (10th Cir. 1993) (recognizing the tension created
between the mandate of Social Security Ruling[6] ("SSR") 82-62 and the claimant's
burden of proof, and finding that the ALJ's duty is one of inquiry and factual
development while the claimant continues to bear the ultimate burden of proving
disability).

In order to determine whether a claimant has the RFC to perform her past
relevant work, the ALJ must evaluate the work demands of the past relevant work
and compare them to the claimant's present capacity.  Villa v. Heckler, 797 F.2d

---

[6] Social Security Rulings are issued by the Commissioner to clarify the
Commissioner's regulations and policies.  Bunnell v. Sullivan, 947 F.2d 341, 346
n.3 (9th Cir. 1991).  Although they do not have the force of law, they are
nevertheless given deference "unless they are plainly erroneous or inconsistent
with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

14

794, 797-98 (9th Cir. 1986). SSR 82-62 states that a determination that a claimant has the capacity to perform a past relevant job must contain among the findings the following specific findings of fact: (1) a finding of fact as to the claimant's RFC; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the claimant's RFC permits her to return to the past job or occupation. See SSR 82-62; see also Pinto, 249 F.3d at 844-45.

A finding that a claimant is able to return to her past relevant work must be based on adequate documentation and a careful appraisal. Dealmeida v. Bowen, 699 F. Supp. 806, 807 (N.D. Cal. 1988) ("Without the proper foundation as to what plaintiff's past relevant work entailed, the ALJ's subsequent determination that plaintiff retained the residual functional capacity to perform that job is not supported by substantial evidence."). This determination requires a careful appraisal of the claimant's statements, the medical evidence, and, in some cases, corroborative information such as the DOT. SSR 82-62. Adequate documentation must be obtained to support the decision, including "factual information about those work demands which have a bearing on the medically established limitations." Id. As a result, "[d]etailed information about . . . mental demands and other job requirements must be obtained as appropriate." Id.; see also Sivilay v. Apfel, 143 F.3d 1298, 1299 (9th Cir. 1998) (remanding to ALJ to "investigate fully the demands of the applicant's past work and compare them to the applicant's residual mental and physical capabilities"). Any determination regarding a claimant's ability to perform past work "must be developed and explained fully in the disability decision" and "every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62.

Here, Plaintiff has not satisfied her burden of proving that she could not return to her previous work as a driving instructor. The VE in this case did not testify that Plaintiff could perform her past relevant work as a driving instructor.

15

1    Rather, the VE provided the ALJ with Plaintiff's work history and the

2    classification for each position under the DOT. (AR at 361-62.) With respect to

3    the driving instructor position, the VE testified that the position was classified as

4    light work, semiskilled, with a specific vocational preparation ("SVP") level of

5    four. (Id. at 362.) Plaintiff does not specify the additional limitations, if any (nor

6    the support for those limitations in the record), that prevent her from performing

7    her past relevant work as a driving instructor. Nor does Plaintiff challenge the

8    ALJ's RFC determination. Rather, the ALJ's RFC of the full range of light work

9    contained all limitations supported by substantial evidence in the record. Further,

10   Plaintiff does not explain the significance of the difference between the

11   classification of her past relevant work under the DOT and the alleged title of her

12   position under the California Vehicle Code, nor does Plaintiff suggest an

13   alternative classification of her past relevant work under the DOT that more

14   accurately reflects her functional limitations.

15        Moreover, even assuming that the ALJ's reliance on the VE's testimony was

16   error, such error was harmless because the ALJ identified other past relevant work

17   that Plaintiff could perform. The Court notes that the determination at step four

18   that a claimant can perform her past relevant work need not be supported by

19   vocational testimony. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996)

20   (noting that the "determination that [the plaintiff] could perform his past relevant

21   work . . . negate[d] his argument that the ALJ erred in the application of the

22   medical-vocational guidelines."). Here, the ALJ's primary determination was that

23   Plaintiff was able to perform her past relevant work as a resource coordinator/

24   administrator. (AR at 20.) The ALJ noted that "[t]his work does not require the

25   performance of work-related activities precluded by the [Plaintiff's] residual

26   function capacity." ( Id.) At the administrative hearing, the VE testified that

27   Plaintiff's past relevant work as a resource coordinator/administrator was

28   classified under the DOT as sedentary work, skilled, with an SVP of seven. (Id. at

16

361.)  The full range of light work includes sedentary jobs.  <u>See</u> 20 C.F.R. §

404.1567(b) ("If someone can do light work, we determine that he or she can also

do sedentary work, unless there are additional limiting factors such as loss of fine

dexterity or inability to sit for long periods of time."); 20 C.F.R. pt. 404, subpt. P,

app. 2, § 202.00(a) (providing that the full range of light work "includes the

functional capacity to perform sedentary as well as light work").  Thus, because

the ALJ correctly determined that Plaintiff had the RFC to perform a full range of

light work, which included sedentary work, her determination that Plaintiff could

perform her past relevant work as a resource coordinator/administrator was proper.

        Based on the foregoing, the Court finds that the ALJ's reliance on the VE's

testimony to determine that Plaintiff could perform her past relevant work as a

driving instructor was proper.  However, even assuming the ALJ's determination

based on the VE's testimony was error, such error was harmless because the ALJ

properly determined that Plaintiff could perform her past relevant work as a

resource administrator/coordinator.

## V.

## <u>ORDER</u>

        Based on the foregoing, IT THEREFORE IS ORDERED that

Judgment be entered affirming the decision of the Commissioner, and dismissing

this action with prejudice.

Dated: September 20, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge

17